UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MARIO PASSERO and CAROL PASSERO,

                              Plaintiffs,

                      -vs-                                                        13-CV-338C

DIVERSIFIED CONSULTANTS, INC.,

                              Defendant.

---

Plaintiffs Mario and Carol Passero brought this action in April 2013 against defendant Diversified Consultants, Inc. ("DCI") seeking actual and statutory damages for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. 227 *et seq.*, based on allegations that defendant utilized an automatic telephone dialing system ("ATDS"), as defined in the TCPA,[1] to place multiple calls to plaintiffs' cellular telephone service in an effort to collect on a debt incurred by non-party Tamieka Jones.[2] *See* Item 1, ¶ 13. In its answer, along with denying the allegations that it engaged in conduct violating the TCPA, DCI pleaded an affirmative defense specifically denying that it utilized an ATDS to contact plaintiffs. *See* Item 6, ¶ 49.

---

[1] (1) The term "automatic telephone dialing system" means equipment which has the capacity–
    (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and
    (B) to dial such numbers.

47 U.S.C. § 227(a).

[2] Plaintiffs also sought damages pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, based on the same conduct. The parties have since settled the FDCPA claims.

DCI has now moved for a temporary stay of proceedings in this action pending the outcome of several petitions filed with the Federal Communications Commission ("FCC") seeking declaratory rulings for clarification of the very same TCPA issues raised by plaintiff in this action. *See* Item 19. For example, DCI has submitted as an exhibit a copy of a petition filed with the FCC in June 2012 by Communications Innovators, requesting that the FCC "clarify, consistent with the text of the TCPA and Congressional intent, that predictive dialers that (1) are not used for telemarketing purposes and (2) do not have the current ability to generate and dial random or sequential numbers, are not 'automatic telephone dialing systems' ('autodialers') under the TCPA and the Commission's TCPA rules." Item 19-3, p. 4 (*In Re Communications Innovators*, filed June 7, 2012). Similar issues are presented by petitions in *In re GroupMe, Inc.*, filed March 1, 2012 (*see* Item 19-4); *In re YouMail, Inc.*, filed April 19, 2013 (*see* Item 19-5); and *In re ACA International*, filed January 31, 2014 (*see* Item 19-6). DCI has also submitted copies of recent correspondence between FCC Commissioners and Members of Congress indicating that the FCC anticipates a ruling on the matters raised by these petitions "in the near future." Item 19-1, p.2; *see* Item 19-7.

DCI's argument for a stay rests on the doctrine of "primary jurisdiction," which "allows a federal court to refer a matter extending beyond the conventional experiences of judges or falling within the realm of administrative discretion to an administrative agency with more specialized experience, expertise, and insight." *Nat'l Commc'ns Ass'n, Inc. v. AT & T Co.*, 46 F.3d 220, 222-23 (2d Cir. 1995) (internal quotation marks and citation omitted). This practice of judicial deference to agency expertise is concerned with

"promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 63 (1956), *quoted in Ellis v. Tribune Television Co.* 443 F.3d 71, 81 (2d Cir. 2006). "Overall, the 'doctrine seeks to produce better informed and uniform legal rulings by allowing courts to take advantage of an agency's specialized knowledge, expertise, and central position within the regulatory regime.' " *Ellis*, 443 F.3d at 82 (quoting *Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 673 (2003) (Breyer, J., concurring).

While "[n]o fixed formula has been established for determining whether an agency has primary jurisdiction" to consider issues within its recognized expertise that are pending before the court, *United States v. Western Pacific Railroad Co.*, 352 U.S. 59, 65 (1956), the analysis generally focuses on the following four factors:

> (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;
>
> (2) whether the question at issue is particularly within the agency's discretion;
>
> (3) whether there exists a substantial danger of inconsistent rulings; and
>
> (4) whether a prior application to the agency has been made.

*Ellis*, 443 F.3d at 82 (citing *Nat'l Commc'ns Ass'n, Inc.*, 46 F.3d at 222 )). The Second Circuit has noted that "[t]he court must also balance the advantages of applying the doctrine against the potential costs resulting from complications and delay in the administrative proceedings." *Id.* at 223.

As indicated by the pleadings and submissions presently before the court, DCI has raised questions in this case regarding (1) whether the "predictive dialer" apparatus utilized

by DCI to place the calls at issue is an automatic telephone dialing system subject to the prohibitions of the TCPA, and (2) whether the TCPA even applies to the debt collection calls complained of.  See Item 19-1, p. 1.  These are the essential issues raised by prior application to the FCC in *In Re Communications Innovators* and the other petitions cited above, presenting questions regarding interpretation of terms and policies clearly within the agency's particular field of expertise and discretion, and well outside the conventional experience of this court.  Indeed, the FCC has previously addressed the definition and scope of the term "automatic telephone dialing system" under the TCPA, and has revisited the issue several times in recognition of the "need to consider changes in technologies." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14092, 2003 WL 21517853, at *46 (F.C.C. July 3, 2003); *see also* 7 F.C.C. Rcd. 8752, 1992 WL 690928 (F.C.C. Oct. 16, 1992); 10 F.C.C. Rcd. 12391, 1995 WL 464817 (F.C.C. Aug. 7 1995); 23 F.C.C.R. 559, 2008 WL 65485 (F.C.C. Jan. 4, 2008).

With regard to the danger of inconsistent rulings, the court need look no further than the split of case law authority on the threshold issue as to whether the protective provisions of the TCPA even apply to debt collection calls. *Compare Meadows v. Franklin Collection Service, Inc.*, 414 F. App'x 230, 235 (11th Cir. 2011) (FCC has made clear that debt collection calls are subject to the TCPA's "established business relationship" and "commercial purpose" exemptions"), *and Franasiak v. Palisades Collection, LLC*, 822 F. Supp. 2d 320 (W.D.N.Y. 2011) (relying on FCC rulemaking decisions that debt collector's ATDS calls to non-debtor fall under TCPA's "commercial call exemption"), *with Iniguez v.*

*The CBE Group*, 969 F. Supp. 2d 1241, 1247 (E.D.Cal. 2013) (neither TCPA nor implementing federal regulations contain a debt collector exception, or any exceptions related to calls made to cellular phones; citing cases).

As one court has recently observed in applying the primary jurisdiction doctrine to grant a debt collector defendant's motion to stay a TCPA action pending the FCC's determination of the issues raised by the *In Re Communications Innovators* petition:

> The law is unclear whether Congress intended the TCPA to prevent [the use of an autodialer to call cellular phones for debt collection purposes]. Telemarketing is one activity while collecting debt from known debtors seems to be a wholly separate activity.  Whether the latter activity falls within the scope of the TCPA is currently being addressed by Congress and the FCC [in *In Re Communications Innovators*].  The issue is clearly one of policy within those bodies, and guidance on the "capacity" of autodialing systems would further clarify the law that [the plaintiff] seeks to enforce in this action.

*Hurrle v. Real Time Resolutions, Inc.*, 2014 WL 670639, at *1 (W.D.Wash. Feb. 20, 2014); *see also Higgenbotham v. Diversified Consultants, Inc.*, 2014 WL 1930885 (D.Kan. May 14, 2014) (granting stay pending FCC's determination of issues rased by the *In Re Communications Innovators* petition);  *Mendoza v. UnitedHealth Group Inc.*, 2014 WL 722031, at * (N.D.Cal. Jan. 6, 2014) (same; finding that "the benefit to be provided by FCC guidance on potentially dispositive issues in this litigation outweighs the benefit to plaintiff in allowing the action to proceed.").  The court agrees with this reasoning and approach.

Finally, the court finds that the advantages of deferring to the FCC's "primary jurisdiction" over the issues raised by the TCPA claims in this case (and in several other cases pending before this court) outweigh the potential for costs resulting from further complications and delay in the administrative proceedings, considering the recent

correspondence between the FCC and Congress indicating the likelihood of a ruling on the pending petitions relatively soon.

Accordingly, under the circumstances presented on this motion, and based on the foregoing considerations, the court makes the following order:

1. Defendant's motion to stay (Item 19) is granted. All discovery and other pretrial proceedings in this action are stayed until a decision is issued by the FCC addressing the TCPA issues raised in *In Re Communications Innovators*, or in any of the other multiple petitions pending before it, relevant to the claims remaining for determination in this case.

2. Within fourteen days of the FCC's ruling, defendant shall file a status report advising the court of the FCC's order, and attaching a copy of the order as an exhibit. If the FCC does not issue a ruling on theses matters by November 21, 2014, defendant shall file a status report by that date advising the court as to the FCC's progress on resolving the petition. Upon receipt and review of these filings, the court will set an appropriate schedule for further proceedings.

So ordered.

                                      \s\ John T. Curtin
                                      JOHN T. CURTIN
                                   United States District Judge

Dated: May 28, 2014